IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RUSSELL SHANE CREAL,<br>KAREN R. CREAL, BETTY L.<br>GUNTER, BERNADETTE E.<br>REDD, and, LARRY JOHNS, on<br>behalf of themselves and all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHASE BANK USA, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 09-CV-00690-KD |

### CHASE BANK USA, N.A.'S MEMORANDUM IN SUPPORT
### OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT

In this case, Plaintiffs, who admit that they were late on their monthly mortgage payments, seek to recover from Chase Bank USA, N.A. on the theory that the late fees charged to Plaintiffs (which were six percent of the late loan payment) were usurious. Specifically, Plaintiffs, who entered into four separate loans with Chase, argue that under the National Bank Act, 12 U.S.C. § 85 ("NBA"), Chase could only charge interest (which includes late fees) in an amount allowed under Delaware law (the state where Chase is located). This part of Plaintiffs' claim is accurate.

Plaintiffs then argue that the late fees they were charged were usurious because Delaware law allows only a maximum late fee of five percent of the late loan payment. This part of Plaintiffs' claim is incorrect and misstates the Delaware law applicable to banks. In making their argument, Plaintiffs rely on a Delaware statute that applies only to licensed lenders and expressly excludes banks like Chase. The Delaware statute that actually applies to banks has no limitation on the amount of a late fee a bank may charge a borrower, other than to provide that it must be in

accordance with the terms of the loan agreement. Here, Plaintiffs do not (and cannot) allege that Chase charged or collected any late fees in excess of the fee allowed by the terms of their respective loan agreements. Accordingly, Plaintiffs have no basis to state any claim against Chase premised on a theory of usury, and this Court should dismiss the complaint with prejudice.

## COMPLAINT ALLEGATIONS AND LOAN DOCUMENTS[1]

On or around December 19, 2006, Plaintiffs Russell Shane Creal and Karen R. Creal entered into a loan with Chase for $117,000 secured by the property located at 8165 Longview Drive W., Grand Bay, Alabama. (Complaint, paras. 3, 9; Ex. A, Creal Adjustable Rate Note and Rider.) The note attaches a rider requiring the Creals to pay late charges for overdue payments in an amount that is the "[g]reater of 6.0% of [the] overdue payment of principal and interest or [] $29." (Ex. A, Creal Adjustable Rate Note and Rider.) The Creals allege they were late on their September 1, 2009 payment, and Chase charged them a late fee in the amount of $52.12, which was approximately six percent (6%) of their monthly payment amount of $868.73. (Complaint, para. 17.)

On or around December 20, 2006, Plaintiff Betty Gunter entered into a loan with Chase for $78,400 secured by the property located at 12971 Del Rio Street, Grand Bay, Alabama. (Complaint, paras. 4, 10; Ex. B, Gunter Adjustable Rate Note and Rider.) The note attaches a rider requiring Mrs. Gunter to pay late charges for overdue payments in an amount that is the "[g]reater of 6.0% of [the] overdue payment of principal and interest or [] $29." (Ex. B, Gunter Adjustable Rate Note and Rider.) Mrs. Gunter alleges she was late on her June 1, 2009 payment,

---

[1]  Chase attaches each Plaintiff's note referenced in the complaint for this Court's consideration, which is proper in connection with a motion to dismiss because these notes are "central to the complaint," and the contents of the documents are not in dispute. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802, n.2 (11th Cir. 1999).

and Chase charged her a late fee in the amount of $34.97, which was approximately six percent (6%) of her monthly payment amount of $582.84. (Complaint, para. 18.)

On or around December 20, 2006, Plaintiff Bernadette Redd and her husband, Donald Redd, entered into a loan with Chase for $65,400 secured by the property located at 357 S. Ann Street, Mobile, Alabama. (Complaint, paras. 5, 11; Ex. C Redd Note and Rider.) The note attaches a rider requiring the Redds to pay late charges for overdue payments in the amount that is the "[g]reater of 6.0% of [the] overdue payment of principal and interest or [] $29." (Ex. C, Redd Note and Rider.) Mrs. Redd alleges she was late on the March 1, 2008 payment, and she paid a late fee in the amount of $41.27, which was approximately six percent (6%) of the monthly payment amount of $687.87. (Complaint, para. 19.)

On or around May 23, 2007, Plaintiff Larry Johns entered into a loan with Chase for $105,000 secured by the property located at 8740 Grand Farms Road W., Grand Bay, Alabama. (Complaint, para. 12; Ex. D, Johns Note and Rider.) The note attaches a rider requiring Mr. Johns to pay late charges for overdue payments in the amount that is the "[g]reater of 6.0% of [the] overdue payment of principal and interest or [] $29." (Ex. D, Johns Note and Rider.) Mr. Johns alleges he was late on several payments to Chase and paid late fees in the amount of $63.71, which he alleges is an amount equal to six percent (6%) of the overdue late payment. (Complaint, para. 20.)

In their complaint, Plaintiffs allege that even though their payments were late and their loan agreements provide for late charges in an amount equal to six percent (6%) of the overdue payment of principal and interest, Chase could only assess a five percent (5%) late charge as a result of their untimely payments. Based on this theory, Plaintiffs assert five claims on behalf of themselves and a putative class: (1) Violations of the National Banking Act; (2) Declaratory and

3

Injunctive Relief; (3) Reformation of Contract; (4) Breach of Contract; and (5) Debt. (Complaint, Counts I-V.)

## ARGUMENT

### I.   LEGAL STANDARD

The United States Supreme Court has abrogated the dismissal standards set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), and which plaintiffs have long relied on in opposition to motions to dismiss.   The Supreme Court admonished that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that a complaint containing "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," does not state a cognizable claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In *Ashcroft*, the Supreme Court outlined the analytical framework for evaluating the sufficiency of a claim under the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*, internal citations omitted).  As set out by the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* Here, Plaintiffs fail to meet the standards required by the Supreme Court because there is no claim asserted by Plaintiffs that is plausible on its face based on the factual allegations pled by Plaintiffs.

4

## II.  DELAWARE LAW DOES NOT LIMIT THE AMOUNT A BANK MAY COLLECT IN LATE CHARGES, RATHER THE TERMS OF THE LOAN AGREEMENT GOVERN.

Each of Plaintiffs' claims is premised upon the theory that Chase violated the NBA by charging late fees in excess of the fees permitted by Delaware law.  While Delaware usury statutes do in fact apply to Chase because Delaware is the state where Chase is located, Plaintiffs' claims fail because they have completely misinterpreted Delaware law.

Section 85 of the NBA provides that:

> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange or other evidences of debt, interest at the rate allowed by the laws of the State, or Territory, or District where the bank is located . . ..

12 U.S.C. § 85; *see also Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 737 (1996); *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 313, 318-19 (1978); *Phipps v. Federal Deposit Ins. Corp.*, 417 F.3d 1006, 1014 (8th Cir. 2005) (national bank "allowed to 'export' the maximum interest rate it could have charged" in state where bank is located).  The term "interest," as used in 12 U.S.C. § 85, includes late fees.  *See* 12 C.F.R. § 7.4001(a); *see also Smiley*, 517 U.S. at 745-47.

Chase, as Plaintiffs allege, is located in Delaware.  (Complaint, para. 42.)  Accordingly, it is appropriate to look to Delaware law to determine the interest and late fees that Chase may charge to borrowers, including Plaintiffs.  12 U.S.C. § 85.  Plaintiffs argue in their complaint that Delaware law precludes a bank from charging a late fee in excess of five percent (5%), citing to Del. Code Ann. tit. 5, § 2231(2).  (Complaint, para. 43.)  But, Section 2231 *does not* apply to *banks*, but rather applies to *licensed lenders*.  Chapter 22 of the Delaware Code, which governs licensed lenders, specifically provides that it does not apply to "any banking organization, federal credit union or insurance company."  Del. Code Ann. tit. 5, § 2202(a)(1).

The provisions of the Delaware Code that apply to banks, and which would be exported to Chase, are found in Chapter 9: "Regulations Governing Business of Banks and Trust Companies." *See* 5 Del. Code Ann. tit 9, § 961, *et seq.*; *see also Copeland v. MBNA America, N.A.*, 883 P.2d 564, 565 (Col. Ct. App. 1994) (recognizing the provisions of Chapter 9 of the Delaware Code would apply to national banks). Regarding interest, Chapter 9 provides that the terms of the loan agreement govern the amount of interest that a bank is allowed to charge. *See* 5 Del. Code Ann. tit 9, §§ 963, 964, 965. Chapter 9 further provides that late fees may be imposed as interest in accordance with the terms of the loan agreement. 5 Del. Code Ann. tit 9, § 968. Specifically, Section 968 provides: *"If the agreement governing a loan so provides, a bank may impose, as interest, a late or delinquency charge upon any outstanding unpaid installment payments or portions thereof under the loan agreement which are in default . . . ."* *Id.* (emphasis added). Section 968 contains no limitation on the amount of any late charge other than what the governing agreement provides. *Id.*

Simply put, the maximum rate of interest (including any late charges) a bank subject to the usury laws of Delaware may charge is governed entirely by the terms of the borrower's loan agreement. For example, in *In re Late Fee and Over-Limit Fee Litigation*, the court addressed claims by a putative class of credit cardholders seeking damages under the NBA on the theory that they paid excessive late fees. 528 F. Supp. 2d 953, 956, 960-61 (N.D. Cal. 2007). Chase was one of the defendants named in the case. *Id.* at 956, n. 1. In addressing the NBA, the court stated as follows:

> [S]ection 85 of the NBA . . . allows banks to charge 'interest at the rate allowed by the laws of the State . . . where the bank is located.' . . . It is undisputed that late and over-limit fees are 'interest' within the meaning of the statute, and the laws of the states which defendant banks are located *expressly allow banks to charge fees at any amount specified in their credit card contracts.*

6

*Id.* at 961 (internal citations omitted) (emphasis added).

Here, Plaintiffs each admit they were late on their payments to Chase. (Complaint, paras. 17-20.) Plaintiffs further allege and acknowledge that their respective notes and riders provide that Chase is entitled to charge a late fee of six percent (6%) of the overdue late payment. (*Id.*, paras. 15-16; *see also* Exs. A-D.) Lastly, Plaintiffs allege Chase charged them late fees that totaled no more than six percent (6%) of their overdue late payments. (*Id.*, paras. 17-20.) Delaware law provides that Chase may collect late fees from borrowers in accordance with the terms of their respective loan agreements. Applying applicable law to the facts alleged by Plaintiffs shows Chase fully complied with the law in charging and/or collecting late fees from Plaintiffs.[2] Accordingly, this Court should dismiss Plaintiffs' complaint in its entirety with prejudice. *See Solis-Ramirez v. U.S. Dept. of Justice,* 758 F.2d 1426, 1429 (11th Cir. 1985) (affirming dismissal where district court did not accept plaintiff's interpretation of the statute and concluded that there was no basis in law for plaintiff's claim).

## CONCLUSION

For the reasons set forth herein, Chase Bank USA, N.A. respectfully requests that this Court dismiss Plaintiffs' Class Action Complaint with prejudice and grant such other and further relief as this Court deems appropriate.

---

[2] Each of Plaintiffs' claims fails for the reasons set forth herein. Plaintiffs' state law claims also fail for the additional reason that they are preempted under the NBA, *Beneficial Nat'l. Bank v. Anderson,* 539 U.S. 1, 10 (2003) ("§§ 85 and 86 provide the exclusive cause of action for [usury] claims"); and Plaintiffs otherwise fail to adequately plead those claims (*e.g.,* there can be no breach of contract, when Plaintiffs' own allegations show that the late fees were charged consistent with the terms of the loan agreements).

7

Date:  December 22, 2009                    CHASE BANK USA, N.A.

                                           By:  __/s/ Matthew C. McDonald_____
                                                  One of its attorneys

Matthew C. McDonald (MCDOM2996)        LeAnn Pedersen Pope, (*pro hac vice* pending)
JONES, WALKER, WAECHTER,               Danielle J. Szukala, (*pro hac vice* pending)
   POITEVENT, CARRÈRE                   BURKE, WARREN, MACKAY
   & DENÈGRE L.L.P.                        & SERRITELLA, P.C.
254 State Street                       330 North Wabash Avenue, 22nd Floor
Mobile, AL 36603                       Chicago, Illinois 60611-3607
Telephone:  (251) 439-7576             Telephone:  (312) 840-7000
Facsimile:  (251) 433-1001             Facsimile:  (312) 840-7900
E-mail: mmcdonald@joneswalker.com      E-mail:        lpope@burkelaw.com
                                                      dszukala@burkelaw.com

8

## CERTIFICATE OF SERVICE

This is to certify that I have caused Chase Bank USA, N.A.'s Memorandum in Support of Its Motion to Dismiss Class Action Complaint to be filed and served on December 22, 2009 via the court's electronic filing system.

/s/ Matthew C. McDonald

635054

# EXHIBIT A

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

December 19, 2006          Canonsburg          ALABAMA
   [Date]                    [City]              [State]

8165 LONGVIEW DR W, GRAND BAY, ALABAMA 36541
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 117,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
CHASE BANK USA, N.A.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 20th day of each month beginning on January 20 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on December 20 ,2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 78828 , Phoenix, AZ 85062-8828
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 868.73 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 20th day of December , 2009 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Four and 525/1000 percentage point(s) ( 4.525 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family - Freddie Mac Uniform Instrument
-419 (0207)
STN1A1V - 0596

Form 3520 7/03
Page 1 of 3

CREAL                    94HB

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     **11.125**   % or less than    **8.125**   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than     **15.125**   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY   (See Attached Rider)**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**   **(See Attached Rider)**

If the Note Holder has not received the full amount of any monthly payment by the end of   XXXXX calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be XXXXX    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

∧₋₋ 415 (7/98)

Form 3580 7/92

CREAL

KRC
R.S.C.

## II. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
RUSSELL SHANE CREAL          -Borrower   KAREN R CREAL                -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                -Borrower

*[Sign Original Only]*

THE PROVISIONS CONTAINED IN THE "RIDER TO NOTE" SIGNED BY
ALL BORROWERS NAMED HEREIN, ARE HEREBY INCORPORATED INTO
AND SHALL AMEND AND SUPPLEMENT THIS NOTE.

Initials KR.C
         RSC.

-815 (9/07)                    Page 3 of 3                  Form 3200 7/92

:272:    CREAL                        64001

# RIDER TO ADJUSTABLE RATE NOTE

December 19, 2006

**Note Date:**

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO ADJUSTABLE RATE NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

(Check Box If Applicable)

| x | **LATE CHARGES FOR OVERDUE PAYMENTS** |

If the Note Holder has not received the full amount of any monthly payment within **10** days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be **the Greater of 6.0** % of my overdue payment of principal and interest or $ **or $29.00** . I will pay this late charge promptly but only once on each late payment.

| x | **BORROWER'S RIGHT TO PREPAY** |

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. The loan that you are closing has a prepayment penalty in place for the first **3** years of this Note. [For all options] If you prepay in full or in part during the first **3** years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

| x | **TIME OF PAYMENTS** |

I will pay principal and interest by making payments every month. I will make my monthly payments on the **20th** day of each month beginning on **January 20, 2007** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **December 20** , **2036** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date"

| x | **INTEREST RATE AND MONTHLY PAYMENT CHANGES - CHANGE DATES** |

The interest rate I will pay may change on the **20th** day of **December 2009** , and on that day every **6TH** month thereafter. Each date on which my interest rate could change is called a "Change Date".

| x | **LIMITS ON INTEREST RATE CHANGES** |

This loan has an interest rate "floor" which will limit the amount the interest rate can decrease. Regardless of any change in the index, the interest rate during the term of this loan will never be less than the initial interest rate provided for in Section 2 of the Note.

_____
RUSSELL SHANE CREAL

_____
KAREN R CREAL

_____          _____

AC6D519- 01/2006

:272:     CREAL                    84HH

# EXHIBIT B



# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

December 20, 2006     MOBILE        ALABAMA
[Date]          [City]          [State]

12971 DEL RIO ST, GRAND BAY, ALABAMA 36541
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 78,400.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
CHASE BANK USA, N.A.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.138 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1st day of each month beginning on February 1 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on January 1 ,2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 78828 , Phoenix, AB 85062-8828
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 582.84 . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the 1st day of January , 2010 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
Four and 38/1000 percentage point(s) ( 4.038 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family - Freddie Mac Uniform Instrument    Form 3590 7/02
-815 (0207)      Page 1 of 3        Index:
STNIA1V - 0590

GUNTER         54BB

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Betty L Gunter_ _____ (Seal)      _____ (Seal)
BETTY L GUNTER              -Borrower                                          -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                                          -Borrower

                                                          *[Sign Original Only]*

THE PROVISIONS CONTAINED IN THE "RIDER TO NOTE" SIGNED BY
ALL BORROWERS NAMED HEREIN, ARE HEREBY INCORPORATED INTO
AND SHALL AMEND AND SUPPLEMENT THIS NOTE.

Initials: _BLG_

-816 (9709)                    Page 3 of 3                    Form 3890 7/02

:2721:    GUNTER,                    54RH

# RIDER TO ADJUSTABLE RATE NOTE

**Note Date:** December 20, 2006

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO ADJUSTABLE RATE NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

[Check Box if Applicable]

[x] **LATE CHARGES FOR OVERDUE PAYMENTS**

If the Note Holder has not received the full amount of any monthly payment within 10 days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be the Greater of 6.0 % of my overdue payment of principal and interest or $ or $29.00 . I will pay the late charge promptly but only once on each late payment.

[x] **BORROWER'S RIGHT TO PREPAY**

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. You have that you are closing has a prepayment penalty in place for the first 3 years of this Note. [For all options] If you prepay in full or in part during the first 3 years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

[x] **TIME OF PAYMENTS**

I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1st day of each month beginning on February 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on January 1 , 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

[x] **INTEREST RATE AND MONTHLY PAYMENT CHANGES - CHANGE DATES**

The interest rate I will pay may change on the 1st day of January 2010 , and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date".

[x] **LIMITS ON INTEREST RATE CHANGES**

This loan has an interest rate "floor" which will limit the amount the interest rate can decrease. Regardless of any change in the Index, the interest rate during the term of this loan will never be less than the initial interest rate provided for in Section 2 of the Note.

_Betty J. Gunter_

BETTY J. GUNTER

ACSD51P 04/2006

:272:     GUNTER                        54BB

# EXHIBIT C

# NOTE

December 20, 2006      MOBILE        Alabama
[Date]          [City]         [State]

357 S ANN ST, MOBILE, ALABAMA 36604
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   65,400.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
CHASE BANK USA, N.A.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   9.625   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   1st   day of each month beginning on   February 1, 2007  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
January 1, 2022  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 78828 Phoenix, AZ 85062-8828
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   687.87

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**     SEE ATTACHED RIDER

If the Note Holder has not received the full amount of any monthly payment by the end of XXXXX    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be XXXXX    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

---

MULTISTATE FIXED RATE NOTE   - Single Family -   FNMA/FHLMC UNIFORM INSTRUMENT

Form 3200 12/83
Amended 5/91

∧ -5A (9115)          Page 1 of 3
VMP MORTGAGE FORMS - (800)521-7291

REDD       65HH

Initials

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   _____(Seal)
DONALD C REDD                                          -Borrower
SSN: ███-██-0578

_____   _____(Seal)
BERNADETTE E REDD                                     -Borrower
SSN: ███-██-2836

_____   _____(Seal)
                                                      -Borrower
SSN:  -   -

_____   _____(Seal)
                                                      -Borrower
SSN:  -   -

*(Sign Original Only)*



# RIDER TO NOTE

**Note Date:**     December 20, 2006

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

(Check Box if Applicable)

| x |

## LATE CHARGE FOR OVERDUE PAYMENTS

If the Note Holder has not received the full amount of any monthly payment within   10 days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be  the Greater of 6.0 % of my overdue payment of principal and interest or $  or $29.00        . I will pay this late charge promptly but only once on each late payment.

| N/A |

## PREPAYMENT PENALTY

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. The loan that you are closing has a prepayment penalty in place for the first _____ years of this Note. [For all options] If you prepay in full or in part during the first _____ years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

| N/A |

## BALLOON PAYMENT

THIS LOAN IS PAYABLE IN FULL AT THE END OF                         ( 15 ) YEARS. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE UNPAID INTEREST THEN DUE.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER OR LOWER THAN THE INTEREST RATE ON THIS LOAN. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF BORROWER OBTAINS FINANCING FROM THE SAME LENDER.

| N/A |

## NOTICE OF MATURITY

At least ninety (90) but not more that one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the large balloon payment which will be due on the Maturity Date (assuming all scheduled regular monthly payments due between the date of the notice and the Maturity Date are made on time).

_Donald C. Redd_
DONALD C REDD

_Bernadette E. Redd_
BERNADETTE E REDD

# EXHIBIT D

  **NOTE** 

May 23, 2007              MOBILE                    Alabama
[Date]                                  [City]           [State]

8740 GRAND FARMS RD W, GRAND BAY, ALABAMA 36541
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $     105,000.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
CHASE BANK USA, N.A.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of      8.950     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the      1st     day of each month beginning on      July 1     , 2007     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on     June 1, 2022     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
700 Kansas Lane Mail Code: LA4-4106 Monroe, LA 71203
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     1,061.86     .

**4. BORROWER'S RIGHT TO PREPAY      SEE ATTACHED RIDER**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments      SEE ATTACHED RIDER

If the Note Holder has not received the full amount of any monthly payment by the end of XXXXX      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be XXXXX      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

THE PROVISIONS CONTAINED IN
THE "RIDER TO NOTE" SIGNED BY
ALL BORROWERS NAMED HEREIN,
ARE HEREBY INCORPORATED INTO
AND SHALL AMEND AND SUPPLEMENT
THIS NOTE.

_____(Seal)
LARRY JOHNS                    -Borrower
SSN: ███-██-─9849

_____(Seal)
                               -Borrower
SSN: -   -

_____(Seal)
                               -Borrower
SSN: -   -

_____(Seal)
                               -Borrower
SSN: -   -

*(Sign Original Only)*

# RIDER TO NOTE

**Note Date:**   May 23, 2007

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

**(Check Box if Applicable)**

**[X]**   **LATE CHARGE FOR OVERDUE PAYMENTS**

If the Note Holder has not received the full amount of any monthly payment within  10 days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be the Greater of 6.0 % of my overdue payment of principal and interest or $ or $29.00            . I will pay this late charge promptly but only once on each late payment.

**[X]**   **PREPAYMENT PENALTY**

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. The loan that you are closing has a prepayment penalty in place for the first  three (3) years    years of this Note.  [For all options] If you prepay in full or in part during the first  three (3) years    years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

**[N/A]**   **BALLOON PAYMENT**

THIS LOAN IS PAYABLE IN FULL AT THE END OF            ( 15 ) YEARS. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER OR LOWER THAN THE INTEREST RATE ON THIS LOAN. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF BORROWER OBTAINS FINANCING FROM THE SAME LENDER.

**[N/A]**   **NOTICE OF MATURITY**

At least ninety (90) but not more that one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the large balloon payment which will be due on the Maturity Date (assuming all scheduled regular monthly payments due between the date of the notice and the Maturity Date are made on time).

LARRY JOHNS

AC6D519- 01/2006        :272:      JOHNS                  20RR